DISCIPLINARY COUNSEL ET AL. *v.* REDFIELD.

[Cite as *Disciplinary Counsel v. Redfield,*
116 Ohio St.3d 262, 2007-Ohio-6039.]

(No. 2007–1117—Submitted August 14, 2007—Decided November 15, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Bernard Redfield, Attorney Registration No. 0024600, whose last attorney registration reported a Cleveland, Ohio, address, was admitted to the practice of law in Ohio in 1984. On February 14, 2005, we suspended respondent's license to practice on an interim basis, pursuant to Gov.Bar R. V(5)(A)(4), upon receiving notice that he was in default on a child-support order. See *In re Redfield,* 105 Ohio St.3d 1433, 2005-Ohio-540, 822 N.E.2d 806. Since December 2, 2005, respondent's license has also been suspended for his failure to register as an attorney for the 2005–2007 biennium. See *In re Attorney Registration Suspension,* 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now impose another suspension—a two-year suspension, with credit for the suspension ordered on February 14, 2005—based on findings that respondent

(1) neglected a client's case, (2) defaulted on support orders for two of his children, (3) failed to cooperate in disciplinary investigations, and (4) still has not perfected his attorney-registration record. On review, we agree that respondent committed professional misconduct and that a two-year suspension, with credit for time served, is appropriate.

{¶ 3} Relators, Disciplinary Counsel and the Cleveland Bar Association, filed separate complaints, alleging a total of six counts of professional misconduct, including charges following up on our interim suspension order. Respondent answered the complaints, admitting some factual allegations but denying the charges of misconduct. A panel of the board heard the cases together, and at that time, the Cleveland Bar Association withdrew one count of misconduct. The panel made findings of fact and conclusions of law and recommended a two-year suspension with credit for the time respondent has been suspended since the February 2005 suspension. The board adopted the panel's findings and recommendation.

{¶ 4} Neither party has objected to the board's report.

## Misconduct

### The Stevens Case

{¶ 5} Daviejean Stevens hired respondent in 2002 to file a claim against her former employer. Respondent filed suit on Stevens's behalf in the Cuyahoga County Court of Common Pleas but did little else in the case. When respondent did not respond to the defendant's motion for summary judgment, the court granted the motion, disposing of Stevens's claim.

{¶ 6} Respondent explained that he had not opposed the motion for summary judgment because Stevens had not given him the names of any witnesses or documentation to substantiate her claim. Respondent also indicated, however, that he had ceased to believe in Stevens's case after hearing her deposition testimony. In fact, he had fully expected the court to grant summary judgment against his client.

{¶ 7} We agree with the panel and board that respondent abandoned his client's case and thereby violated DR 6–101(A)(3) (prohibiting neglect of an entrusted legal matter), 7–101(A)(1) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of a client through reasonably available legal means), and 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract for professional employment).

### Failure to Cooperate in the Bar Association's Investigations

{¶ 8} Stevens lodged a grievance against respondent. In March 2005, respondent replied to a letter inquiring about the grievance and met in August 2005

with the bar association's investigator. After that meeting, however, the investigator could not find respondent at any of the telephone numbers or addresses he had given or that the investigator could find for him.

{¶ 9} Upon receiving a second grievance about respondent, the bar association sent him another certified letter of inquiry, in July 2005. The certified letter came back unclaimed. In August 2005, the bar association sent respondent, by regular mail, another letter of inquiry, which was apparently delivered. Respondent did not reply.

{¶ 10} We agree with the panel and board that respondent's failure to respond during the bar association's investigations violated Gov.Bar R. V(4)(G) (requiring a lawyer to assist in a disciplinary investigation).

### Default on Child–Support Orders

{¶ 11} As of February 28, 2007, respondent owed $18,415.12 in child-support arrearages for one of his children, having made his last payment in that case in July 2005. Also as of that date, respondent owed $12,119.38 in child-support arrearages for another of his children, having made the last payment in that case in May 2005. The Cuyahoga County Child Support Enforcement Agency moved to execute in these cases, and in January 2006, after respondent failed to appear at a hearing, the Cuyahoga County Juvenile Court issued warrants for respondent's arrest. In early March 2007, respondent borrowed $2,500 from a friend to post bond.

{¶ 12} As of the March 23, 2007 panel hearing in this case, respondent remained in default on his child-support obligations for these two children. He has thus not complied with Gov.Bar R. V(5)(D)(1)(b) or (c) by filing with the board any of the following: a certified copy of a judgment entry reversing the determination of default as to his child-support obligations, a notice from a court or child-support-enforcement agency that he is no longer in default on the child-support orders, or a notice from a court or child-support-enforcement agency that he is subject to and complying with a withholding or deduction notice to collect current support and any arrearage due under the child-support orders.

{¶ 13} We agree with the panel and board that by failing to pay child support, respondent violated DR 1–102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice) and 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law).

### Failure to Cooperate in Disciplinary Counsel's Investigation

{¶ 14} In February 2005, Disciplinary Counsel sent a letter of inquiry to respondent by certified mail, requesting an explanation as to the child-support defaults. Although sent to respondent's business address as listed in attorney-

registration records, the letter came back unclaimed. In March 2005, Disciplinary Counsel sent another certified letter of inquiry, this time to respondent's home address as listed in attorney-registration records, asking about the defaults. The second letter also came back unclaimed.

{¶ 15} In February 2006, Disciplinary Counsel sent a letter to respondent by certified mail notifying him of Disciplinary Counsel's intent to file a formal complaint with the board. That letter came back unclaimed.

{¶ 16} At the panel hearing, respondent explained that since December 2005, he had not been living at the address that he had listed with attorney registration as his home address, which was for an apartment above a child-care office. When respondent moved in December 2005, he had no other permanent address, so he received permission to continue to receive mail at that apartment. Respondent also did not regularly pick up his mail from the location, and he testified that he believed that much of his mail had been discarded.

{¶ 17} Respondent ignored or evaded the disciplinary process until Disciplinary Counsel moved for default. Respondent then participated in a prehearing conference, evidently having to borrow a cell phone to do so, and filed both a memorandum opposing the motion and an answer to the complaint.

{¶ 18} We agree with the panel and board that respondent's failure to respond to the Disciplinary Counsel's investigation violated Gov.Bar R. V(4)(G).

### Failure to Register

{¶ 19} Respondent has continued to ignore his obligation to register as an attorney. He thereby remains in violation of Gov.Bar R. VI(1)(A).

### Sanction

{¶ 20} In determining the appropriate sanction to impose for attorney misconduct, "we consider the duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases." *Stark Cty. Bar Assn. v. Ake,* 111 Ohio St.3d 266, 2006-Ohio-5704, 855 N.E.2d 1206, ¶ 44. We weigh the aggravating and mitigating factors to decide whether to be lenient or stringent in our disposition. See Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline (BCGD Proc.Reg.). Moreover, we are not limited to the factors specified in the rule and may take into account "all relevant factors" in determining the sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 21} Respondent knowingly violated his duty to conscientiously protect his client's interest during representation. He knowingly violated his duties to the legal profession and public by failing to cooperate in the disciplinary process that

enforces standards of conduct. Respondent knowingly violated his duty to this court and the public by failing to update the attorney-registration records. Last, respondent knowingly violated his duty to comply with court orders, putting at risk the welfare of his children.

{¶ 22} The relevant aggravating factors are that respondent committed multiple ethical infractions, BCGD Proc.Reg. 10(B)(1)(d), and he already has a disciplinary record, BCGD Proc.Reg. 10(B)(1)(a).

{¶ 23} Two of our previous decisions are instructive. In *Disciplinary Counsel v. Curry*, 112 Ohio St.3d 130, 2006-Ohio-6517, 858 N.E.2d 392, and *Disciplinary Counsel v. Geer*, 112 Ohio St.3d 124, 2006-Ohio-6516, 858 N.E.2d 388, we issued one-year suspensions without credit for the interim licensure suspensions to lawyers who had failed for years to comply with child-support orders and also completely ignored the disciplinary proceedings. Consistent with the panel and board reports, however, we see no value in adding yet another year of suspension. As the panel and board observed:

{¶ 24} "Respondent has no permanent home and testified that his existence is at bare subsistence level. He testified that he is unable to do legal work or related work because his law license and his driver's license have been suspended in consequence of his inability to pay his child support arrearage. He testified that he has repeatedly been told by prospective employers that he is overqualified for the work he is allowed to do and that he has not been hired because employers fear his sudden departure when his law license is regained. His geographical area for employment is circumscribed because he has no automobile and cannot drive. He describes himself as barely existing * * *.

{¶ 25} "It is noteworthy that, in spite of his ignoring the ongoing disciplinary investigations and institution of disciplinary proceedings against him, Respondent resisted judgment by default and defended the action. * * *

{¶ 26} " * * *

{¶ 27} "In 1984, Respondent passed the Ohio Bar Examination after five attempts. His private law practice never produced a large income. * * * The income from his law practice was marginal and he fell in arrears of court ordered child support. When eventually his law license was suspended for the interim, his income ceased and his circumstances have spiraled down from that time. Respondent's law license has now been suspended for more than two years. He has no assets with which to satisfy the accrued support arrearage and his current income is below poverty level. His prospect for improved financial circumstance seems bleak.

{¶ 28} "Unlike [respondents in] *Curry* and *Geer*, although he failed to cooperate in the investigation * * *, eventually Respondent presented his limited

defense to a hearing panel. The support amounts here are much smaller than [in] *Geer.* Unlike Curry who could earn more money from his non-law employment than from his law practice, Respondent here has no other marketable skills.

{¶ 29} "Respondent also has neglected a legal matter undertaken for a client to the client's prejudice.

{¶ 30} "The differences in Respondent's circumstances from those of [the respondents in] *Curry* and *Geer* are sufficient, however, to suggest that should Respondent ever pay his full arrearage, or reach a workable compromise to afford relief from the interim suspension, one or two additional years of suspension thereafter [would] defeat the coercive purpose for which the interim suspension was imposed initially."

{¶ 31} Justice Lundberg Stratton expressed similar concerns in her dissenting opinion in *Geer*, 112 Ohio St.3d 124, 2006-Ohio-6516, 858 N.E.2d 388, ¶ 24, and *Curry*, 112 Ohio St.3d 130, 2006-Ohio-6517 858 N.E.2d 392, ¶ 24 ("I am concerned that a finite term of suspension on top of his interim suspension reduces respondent's ability to earn a living, thereby diminishing his ability to support his children in the long run").

{¶ 32} We therefore suspend respondent's license to practice law in Ohio for a period of two years, but give credit for the time he has been suspended since February 14, 2005. Respondent's reinstatement shall be conditioned upon, in addition to all the requirements under Gov.Bar R. V(10)(A), his proof of compliance with all the conditions imposed in the interim suspension order of February 14, 2005. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and O'CONNOR and O'DONNELL, JJ., dissent.

------

**MOYER, C.J., dissenting.**

{¶ 33} I respectfully dissent from the majority opinion with respect to the sanction imposed on respondent. The board recommended that respondent be suspended for two years, with credit given for the time respondent has been suspended since the February 2005 suspension. While the majority concluded that the board's recommendation was appropriate, I disagree and would impose a stricter sanction on respondent.

{¶ 34} The board found that respondent committed multiple ethical infractions. Respondent (1) neglected a client's case, (2) defaulted on support orders for two of his children, (3) failed to cooperate in disciplinary investigations, and (4) failed to perfect his attorney-registration record. Further, his misconduct persisted

over the course of several years: in 2002, respondent abandoned his client's case; in 2005, respondent failed to respond during the bar association's and Disciplinary Counsel's investigations into his misconduct; and, as of February 2007, respondent owed more than $30,000 in child-support arrearages for two of his children. In addition, respondent has a prior disciplinary record.

{¶ 35} Respondent has repeatedly violated his duties to the legal profession, the public, and the courts. As a result, I would suspend respondent from the practice of law for two years, with no credit given for the time respondent has been suspended. Instead, I would impose a two-year suspension to run from the date this opinion is released.

O'CONNOR and O'DONNELL, JJ., concur in the foregoing opinion.

———

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator Disciplinary Counsel.

M. Terence Cawley; and Lustig, Evans & Lucas Co., L.P.A., and Robert Lustig, for relator Cleveland Bar Association.

Bernard Redfield, pro se.