DISCIPLINARY COUNSEL *v.* WRAGE.

[Cite as *Disciplinary Counsel v. Wrage,* 139 Ohio St.3d 152, 2014-Ohio-807.]

*Attorneys—Misconduct—Failure to pay child support—Failure to respond to reasonable requests for information—Two-year suspension with one year stayed on conditions and no credit for interim suspension.*

(No. 2013-0931—Submitted August 21, 2013—Decided March 11, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-006.

_____

**Per Curiam**.

{¶ 1} Respondent, Eric Andrew Wrage of Minford, Ohio, Attorney Registration No. 0070463, was admitted to the practice of law in Ohio in 1999.

{¶ 2} On October 19, 2009, the secretary of the Board of Commissioners on Grievances and Discipline submitted a certified copy of a determination that Wrage was in default of a child-support order. In accordance with Gov.Bar R. V(5)(A), we entered an interim suspension order and referred the matter to relator, disciplinary counsel, for investigation and the commencement of disciplinary proceedings. *In re Wrage*, 123 Ohio St.3d 1498, 2009-Ohio-6095, 916 N.E.2d 1077.

{¶ 3} In a complaint certified to the board on February 13, 2012, relator charged Wrage with violations of DR 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in

conduct that adversely reflects on the lawyer's fitness to practice law) and Gov.Bar R. V(4)(G) (prohibiting a lawyer from neglecting or refusing to assist in a disciplinary investigation).[1] The conduct giving rise to these alleged violations includes a 2006 misdemeanor conviction for aggravated menacing, Wrage's default on his child-support obligation beginning in 2009, various contempt orders arising out of his child-support default, and his failure to cooperate in the resulting disciplinary investigation.

{¶ 4} Although Wrage accepted service of the complaint, he did not timely file an answer; several months after relator moved for default, Wrage finally answered the complaint, and the matter was set for hearing.

{¶ 5} The parties submitted stipulations of fact and misconduct, agreed to dismiss the alleged violation of DR 1-102(A)(6), and proposed a two-year suspension with one year stayed on conditions, with credit for time served under the interim child-support suspension, as the appropriate sanction for Wrage's misconduct. In support of these stipulations, they submitted 19 stipulated exhibits and Wrage's testimony at the hearing.

{¶ 6} The panel adopted the parties' stipulations of fact, found that Wrage had committed the remaining charged misconduct, and adopted the parties' proposed sanction. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction—except the board would not grant Wrage credit for time served under the interim child-support suspension. We adopt the board's findings of fact, conclusions of law, and recommended sanction.

### Misconduct

{¶ 7} The stipulated facts, exhibits, and Wrage's hearing testimony demonstrate that he defaulted on his child-support obligation in 2009, which

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility.

resulted in the suspension of his drivers' license and the interim suspension of his license to practice law in Ohio. He was found to be in contempt of court, but he entered into an agreement with the Scioto County Child Support Enforcement Agency ("Scioto County CSEA") and purged his contempt with a payment of $4,039.30.

{¶ 8} In November 2010, the Scioto County CSEA issued a second notice of default against Wrage, and in June 2011, he was once again found in contempt of court. Wrage agreed to pay another $4,039.20 to purge the contempt, but failed to do so. Consequently, the court ordered him to serve 30 days in jail, but gave him until January 24, 2012, to purge his contempt. Wrage filed for bankruptcy in December 2011, listing $17,670 in unpaid child-support obligations on his petition, but he made a $4,039.20 payment in January 2012 so that his jail sentence would remain suspended. In July 2012, the Scioto County CSEA filed a third motion for contempt. Wrage has filed a motion to modify his ongoing child-support obligation, but as of March 21, 2013, his arrearage was more than $40,000.

{¶ 9} Relator first contacted Wrage by mail in March 2010 and instructed him to contact the Ohio Lawyers' Assistance Program ("OLAP") and to provide relator with a status update on his child-support arrearages and any counseling that he might be receiving. He did not respond to the letter that relator mailed to him in March 2010 or to a second copy that was hand-delivered to his residence on April 22, 2010. Nor did he respond to a subpoena ordering him to appear for a deposition. He did not answer the complaint in this disciplinary action until after relator moved for default.

{¶ 10} These facts clearly and convincingly prove that Wrage violated Prof.Cond.R. 8.1(b), 8.4(d), and 8.4(h) and Gov.Bar R. V(4)(G), as charged in the complaint.

**Sanction**

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 12} The board found that no aggravating factors were present. It adopted the parties' stipulations that Wrage has no prior disciplinary violations[2] and that other penalties or sanctions have been imposed. *See* BCGD Proc.Reg. 10(B)(2)(a) and (f). The board adopted the parties' stipulated sanction of a two-year suspension with the second year stayed on the conditions that Wrage (1) satisfy all of the conditions identified in our November 19, 2009 interim suspension order, (2) remain in counseling through the Paint Valley Behavioral Health Center, (3) commit no further misconduct, and (4) participate in monitored probation during the stayed portion of his suspension. The board, however, rejected the parties' stipulation that the time that Wrage served under the interim suspension order be credited against the unstayed portion of the suspension.

{¶ 13} In a default proceeding in *Disciplinary Counsel v. Curry*, 112 Ohio St.3d 130, 2006-Ohio-6517, 858 N.E.2d 392, we imposed a one-year suspension for an attorney's failure to comply with child-support orders and failure to cooperate in the resulting disciplinary investigation. Noting that the attorney had failed to adequately address his child-support obligations for 12 years while holding a license to practice law and that he had failed to appear to explain why

---

2. During the pendency of this action, however, we have imposed a suspension for Wrage's failure to comply with the registration requirements of Gov.Bar R. VI for the 2013-2015 biennium. *In re Attorney Registration Suspension of Wrage*, 136 Ohio St.3d 1544, 2013-Ohio-4827, 996 N.E.2d 973.

he was unable to do so, we declined to credit him for time served under the interim suspension.

{¶ 14} And in *Disciplinary Counsel v. Redfield*, 116 Ohio St.3d 262, 2007-Ohio-6039, 878 N.E.2d 10, we disciplined an attorney who neglected a client's legal matter in addition to failing to pay child support. Unlike Curry, who defaulted in the resulting disciplinary proceeding, Redfield eventually appeared to defend against the relator's motion for default, though his license was already under suspension for an attorney-registration violation. *Id.* at ¶ 2, 17, 28. We adopted the board's recommendation and suspended him for two years, with credit for time served under the interim suspension. *Id.* at ¶ 32.

{¶ 15} Although the following stipulated facts were not alleged in the complaint or discussed by the board, we find that they are relevant in determining the appropriate sanction for Wrage's misconduct. In October 2009, Wrage was convicted of driving under the influence ("DUI") in Lycoming County, Pennsylvania, and sentenced to three days to six months in prison and ordered to pay $1,901.50 in fines and costs. He served three days in prison and completed six months of probation without incident.

{¶ 16} In May 2012, Wrage pleaded guilty to a first-degree-misdemeanor charge of DUI, driving without a license, and several minor traffic violations, and he pleaded no contest to a second-degree-misdemeanor charge of resisting arrest, all of which arose out of a May 25, 2011 traffic stop in Greene County, Pennsylvania. He was sentenced to 90 days to five years in prison and more than $3,000 in fines and costs, but after serving 90 days in prison, he was placed on probation for the remainder of the five-year term.

{¶ 17} Wrage violated his probation in February 2013 by testing positive for alcohol during a probation visit and was sentenced to 12 days in prison—ten of which he served in an in-patient substance-abuse treatment facility. Since March 2013, Wrage's probation has been monitored by the Ohio Department of

Rehabilitation and Correction. At the time of the hearing, he was in compliance with the requirements of his probation. In January 2013, he began participating in biweekly counseling for depression and alcohol dependency.

{¶ 18} It is not clear from the record when Wrage's problems with alcohol began, although he testified that he became involved with OLAP shortly after completing law school and completed a two-year contract with the program. He testified that he has not sought assistance from the program for his more recent problems and indicated that Alcoholics Anonymous and other faith-based programs do not work for him because he is agnostic. We note that Wrage was not diagnosed with depression until November 2012 and did not seek counseling for his ongoing issues with alcohol until December 2012 or January 2013. Thus, at the time of the hearing on this matter, he had only been receiving help for approximately six months. As a condition of his probation for his May 2011 DUI, however, he is obligated to remain in treatment until November 2017.

{¶ 19} Based on the foregoing, we agree that a two-year suspension with one year stayed on conditions and no credit for time served under the interim child-support suspension is the proper sanction for Wrage's misconduct. This suspension is comparable to the sanctions we have imposed for comparable misconduct in *Curry* and *Redfield*, but will allow for a period of monitored practice on Wrage's reinstatement to ensure that his underlying alcohol dependency does not negatively affect his clients.

{¶ 20} Accordingly, Eric Andrew Wrage is suspended for two years, with the second year stayed on the conditions that Wrage (1) submits satisfactory proof to the board that he is no longer in default on his child-support obligation, or that he is subject to and in compliance with a withholding or deduction notice or a new or modified child-support order to collect current support or any arrearage due under the child-support order that was in default, (2) continues to participate in counseling through the Scioto Paint Valley Mental Health Center for not less

6

than three years or for one year after he is reinstated to the practice of law, whichever is longer, (3) serves a one-year period of monitored probation in accordance with Gov.Bar R. V(9) upon his reinstatement to the practice of law, and (4) commits no further misconduct. Costs are taxed to Wrage.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

LANZINGER and O'NEILL, JJ., concur with the sanction but would give credit for time served under the interim suspension.

_____

Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, and Donald M. Sheetz, Assistant Disciplinary Counsel, for relator.

Eric Andrew Wrage, pro se.

_____